IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT L. COLLINS BEY,

                Plaintiff,

v.

TIM HAINES, PETER HUIBREGTSE,
MICHAEL MEISNER, TONY ASHWORTH,
MARY MILLER, CINDY SAWINSKI,
KAREN ANDERSON, CYNTHIA M. THORPE,
DR. JAMES THORPE, DR. JAMES WOMMACK,
DR. WILLIAM GISWOLD, DR. TOM BOSTON,
and GARY BOUGHTON,

                Defendants.

ORDER

13-cv-618-jdp

---

      Plaintiff Robert L. Collins Bey brings Eighth Amendment deliberate indifference and state law negligence claims regarding defendant prison officials' alleged failure to provide him with adequate dental care. In a March 13, 2015 order, I allowed plaintiff's court-recruited attorneys to withdraw from the case after plaintiff sent them inappropriate, harassing letters. Dkt. 62. I stated, "Plaintiff has abused the privilege provided to him and I will not recruit new counsel unless plaintiff can show that he is in immediate need of dental care that prison officials refuse to provide." *Id*. at 2. I gave plaintiff a short deadline to present such evidence, *id*., but he did not do so.

      While plaintiff was still represented, he filed an amended complaint that I accepted as the operative pleading, noting that "plaintiff adds supplemental allegations that he continues to wait for tooth extraction and replacement dentures. I understand plaintiff to be adding an Eighth Amendment claim against defendant Gary Boughton, WSPF warden, for failing to respond to his complaint about the lack of dental treatment." Dkt. 72, at 1.

Currently before the court are several motions. Shortly after I accepted plaintiff's amended complaint, he filed a motion to appoint an expert or "reinstat[e] appointment of counsel," Dkt. 76, a motion for a new pretrial conference order, Dkt. 76, and a motion to amend the scheduling order, Dkt. 78. Defendants filed a motion for summary judgment, Dkt. 80. Plaintiff followed with a motion for a ruling on his motion regarding counsel and an expert, Dkt. 97, a motion to strike defendant Mary Miller's testimony, Dkt. 97, and a motion regarding his legal loan, Dkt. 101. Defendants have also filed a motion to amend the scheduling order, Dkt. 105.

**A. Counsel/expert**

In his motion to recruit counsel or appoint an expert, plaintiff states that the case will involve issues of medical expertise for which counsel or an expert will be necessary. This may be so, and was one of the reasons I located counsel for him earlier in the proceedings. However, as I stated earlier, I will not recruit new counsel unless plaintiff can show that he is in immediate need of dental care. Plaintiff did not submit evidence showing that this was the case, although he has now amended his complaint to include new allegations to this effect. Particularly given plaintiff's previous misconduct regarding his recruited counsel, I will not consider his new request until he shows some evidence supporting these allegations. Plaintiff should be able to do so in his summary judgment response, although there are questions about his ability to submit a response given the status of his legal loans, which I will address further below. For now, his motion for recruitment of counsel or appointment of expert will be denied.

B. Access to courts

Plaintiff has filed a motion for extension of his legal loan, stating that without legal loan funds, he will not be able to pay for postage or other materials so that he may submit new filings with the court. This is not entirely accurate. Based on the parties' submissions, there are at least three possible sources by which plaintiff could obtain postage and materials: (1) a legal loan; (2) under the prison's policy providing free materials to indigent inmates; or (3) his own funds. But it is undisputed that plaintiff was denied an extension of his legal loan, and that he is not considered indigent because he receives "special pay" given to inmates on administrative confinement that is immediately taken to pay off filing fee debts he has accrued (including the filing fee for this case), leaving him with no funds with which to purchase materials.

Defendants argue that "a denial of DOC's legal loan funding is not a determination in which this court will interfere." Dkt. 102, at 2 (quoting *Gruenberg v. Tetzlaff*, No. 13-CV-095-WMC, 2014 WL 3735875, at *5 (W.D. Wis. July 29, 2014)). However, the legal loan mechanism is irrelevant to plaintiff's ultimate concern: provision of postage and writing materials. The Constitution guarantees prisoners the right to have "meaningful access to the courts," *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004), and part of this right is that "indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977). Whether this comes from legal loans or some other source is generally not the court's concern. *Ripp v. Nickel*, 838 F. Supp. 2d 861, 865 (W.D. Wis. 2012). ("It is up to defendant how he insures that plaintiff receives those

3

materials, that is, whether he lends plaintiff the funds he needs to purchase the materials himself or simply provides the materials to plaintiff.").

This raises the question of plaintiff's indigence. The state considers him to not be indigent because he receives "special pay." But these funds are taken from plaintiff to pay off debts before he can use them to buy materials. This closely resembles the prisoner's predicament in *Ripp*, in which this court ordered the state to provide plaintiff with basic scribe materials despite him receiving income from the prison. *Id*. at 865 ("Because [Ripp's] status is 'involuntary unassigned,' he makes only $8 each month, all of which is immediately deducted from his account for various purposes, including court filing fees, his release account and medical co-payments.")

Based on the analysis in *Ripp*, it is likely that the state must provide plaintiff with legal materials, whether through the legal loan mechanism or otherwise. But there may be no need for a court order mandating the provision of materials because the issue may be moot; I suspect that plaintiff may have new loan funds available to him with the advent of the new calendar year. I will have defendants show cause why I should not order the provision of funds.

C.  Motion for new preliminary pretrial conference order

Plaintiff asks for a new pretrial conference order giving him permission to conduct discovery on the claim against defendant Boughton added to his amended complaint. Dkt. 76. I will deny this request because there is no need to formally amend the pretrial conference order to account for the new claim. Defendant Boughton is represented by the same assistant attorney general as the rest of the defendants, and plaintiff is free to conduct discovery on all of his claims.

4

**D. Motion to strike defendant Miller's testimony**

Plaintiff previously filed motions to compel discovery and for sanctions. Dkt. 40. One of plaintiff's concerns was that defendants provided him with what they termed "draft" responses from defendant Mary Miller but were unable to obtain her signature because Miller was unable to provide testimony for medical reasons. Dkt. 43, at 1-2. Defendants withdrew those responses, and started that they would provide responses for Miller if she became able to provide sworn testimony. The court accepted this reasoning but warned defendants against the practice of submitting draft versions of discovery responses. Dkt. 49, at 3.

As part of their summary judgment materials, defendants state that defendant Miller is no longer incapacitated, and she has submitted a declaration supporting the summary judgment motion. Plaintiff moves to strike Miller's declaration because defendants have not submitted evidence showing how Miller has regained her capacity to provide testimony. Dkt. 97, at 17. Plaintiff suggests that his request for sanctions should be revisited.

I will deny plaintiff's motion to strike and for sanctions. Plaintiff has reason to be dissatisfied with the way defendants responded to his discovery requests. On the other hand, I take defendants' assertions about Miller's capabilities at face value. Most importantly, plaintiff has not been prejudiced. Defendants state that they have sent him Miller's discovery responses, and I will permit him time to conduct further discovery before responding to the motion for summary judgment.

If Miller's health or ability to testify again become issues in this case, I will ask defendants to submit the relevant medical information *in camera*.

E. **Motions to amend scheduling order**

I will grant the parties' motions to amend the scheduling order. The remaining deadlines will be stricken, and I will give plaintiff time to conduct further discovery and submit his summary judgment response. Following the summary judgment stage, I will set a new trial date and related schedule.

ORDER

IT IS ORDERED that:

1. Plaintiff Robert L. Collins Bey's motion for a ruling on his request for appointment of an expert or recruitment of counsel, Dkt. 97, is GRANTED.

2. Plaintiff's motion to appoint an expert or recruit counsel, Dkt. 76, is DENIED without prejudice.

3. Plaintiff's motion for a new preliminary pretrial conference order, Dkt. 76, is DENIED.

4. Plaintiff's motion to strike defendant Mary Miller's declaration and for sanctions against defendants, Dkt. 97, is DENIED.

5. Defendants may have until February 19, 2016, to show cause why this court should not order the state to provide plaintiff with postage and writing materials.

6. The parties' motions to amend the scheduling order, Dkt. 78 & 105, are GRANTED. The existing schedule is STRICKEN. Plaintiff may have until April 13, 2016, to submit his materials in opposition to defendants' motion for summary judgment. Defendants have until April 25, 2016, to file their reply.

Entered February 5, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge