IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT L. COLLINS BEY,

                Plaintiff,

   v.

TIM HAINES, PETER HUIBREGTSE,
MICHAEL MEISNER, TONY ASHWORTH,
MARY MILLER, CINDY SAWINSKI,
KAREN ANDERSON, CYNTHIA M. THORPE,
DR. JAMES THORPE, DR. JAMES WOMMACK,
DR. WILLIAM GISWOLD, DR. TOM BOSTON,
and GARY BOUGHTON,

                Defendants.

OPINION & ORDER

13-cv-618-jdp

---

Plaintiff Robert L. Collins Bey, a prisoner currently housed at the Wisconsin Secure Program Facility (WSPF), brings Eighth Amendment deliberate indifference and state law negligence claims regarding defendant prison officials' alleged failure to provide him with adequate dental care. He alleges that prison staff left serious dental problems untreated for unreasonably long periods, including a delay of eight years in providing him with a replacement for a broken partial denture. The evidence shows that Collins Bey was subjected to long delays in receiving dental care. But the fault lies not with the dentists who treated him. The problem is the state's prison dental care system, which relies on part-time dentists who may not have the time to serve all the dental needs of inmates.

Several motions are before the court. Collins Bey has filed a series of preliminary motions, all of which I will deny. Defendants have filed a motion for summary judgment, which I will grant regarding Collins Bey's claims for damages against defendants in their individual capacities.

But I will deny defendants' motion as it pertains to Collins Bey's claim for injunctive relief against defendants in their official capacities because the summary judgment materials raise questions about the state's policy on staffing the WSPF dental unit. I will set a deadline for defendants to file a new summary judgment motion, if they so choose, so that the parties may more fully address this issue before trial.

PRELIMINARY MOTIONS

In a February 5, 2016, order, I addressed Collins Bey's motion for extension of his legal loan, Dkt. 101, in which he stated that without legal loan funds, he would not be able to pay for postage or other materials he needed to submit filings with the court. I stated as follows:

> Based on the analysis in *Ripp* [*v. Nickel*, 838 F. Supp. 2d 861, 865 (W.D. Wis. 2012), in which this court discussed provision of legal materials to prisoners], it is likely that the state must provide plaintiff with legal materials, whether through the legal loan mechanism or otherwise. But there may be no need for a court order mandating the provision of materials because the issue may be moot; I suspect that plaintiff may have new loan funds available to him with the advent of the new calendar year. I will have defendants show cause why I should not order the provision of funds.

Dkt. 106, at 4. Defendants responded, explaining that Collins Bey was approved for a new $50 legal loan at the beginning of 2016. This has sufficed, as Collins Bey has produced voluminous summary judgment opposition materials. I will deny his motion for extension of legal loan funds as moot.

Regarding those voluminous summary judgment opposition materials, Collins Bey asks for leave to file an oversized brief and have it electronically served upon defendants. Dkt. 112. This motion is unnecessary because this court has no local rule limiting brief

2

length, and defendants have received his materials electronically under the court's service agreement with the Wisconsin Department of Justice.

Collins Bey has renewed his motion for the court's assistance in recruiting counsel or for appointment of an expert witness, Dkt. 111. So far, Collins Bey has done a good job of presenting his Eighth Amendment case. I understand well the difficulties facing a pro se plaintiff in litigating medical care claims, especially claims of medical malpractice. But I will deny Collins Bey's motion, even though it means that his medical malpractice claims will fail. I already recruited counsel for Collins Bey, but he harassed his attorneys, so I allowed them to withdraw. I declined to assist him further, unless he can provide evidence showing that he is in immediate need of dental care that prison officials are refusing to provide. *See* Dkt. 62, 106. He has not made this showing. Rather, in his most recent filings, Collins Bey suggests that he has finally received the partial denture he long sought, and is receiving treatment for gum disease he believes was caused by the deprivations at issue in this case. At this point, I will proceed to consider defendants' summary judgment motion and Collins Bey's pro se response.

But Collins Bey has raised serious issues about the dental care system in Wisconsin's prisons, which affect not only him, but other inmates. Accordingly, I will revisit the issue of appointing counsel after I receive defendant's response to this order as it relates to the staffing of the dental unit at WSPF.

UNDISPUTED FACTS

Unless otherwise indicated, the following facts are undisputed.[1]

Plaintiff Robert Collins Bey is an inmate in the custody of the Wisconsin Department of Corrections (DOC) currently incarcerated at the Wisconsin Secure Program Facility. During the events at issue during this lawsuit, he spent time at both WSPF and the Columbia Correctional Institution.

In 1992, Collins Bey began wearing dentures "to aid with chewing food and to terminate perpetuating sore and bleeding gums that were often painful and disallow for food consumption that led to weight loss and constant stomach pains from hunger due to being unable to select a more softer diet." Dkt. 113, at 2. The partial dentures broke in 2007.

Collins Bey was at WSPF at that point. He made a series of dental service requests (DSR) about his broken dentures and a broken filling. He made requests to defendant WSPF dentist Thomas Boston in April and May 2007. Boston placed Collins Bey on the "routine" wait list, because he did not see these needs as an emergency. While Boston was the dentist at WSPF, he worked only six hours a week there.

Defendant dentist James Wommack replaced Boston as the WSPF dentist sometime in summer 2007. Collins Bey submitted two more DSRs in July 2007. Wommack saw Collins Bey on July 26. Wommack examined Collins Bey, had X-rays taken, and filled tooth #2. He told Collins Bey that he was being put on the "cleaning list" and the "essential waiting list" for continuing restorative treatment. The "essential" list was for patients who had dental

---

[1] Collins Bey did not strictly comply with this court's summary judgment procedures by placing his proposed findings of fact in a document separate from his brief. Instead, he placed them in a "supplemental fact" section in his opposition brief. *See* Dkt. 113, at 2-9. The state ignored these findings and did not file a reply brief. I will consider Collins Bey's supplemental proposed findings in addressing the summary judgment motion.

needs more pressing than routine care, but were not facing emergencies. Wommack told Collins Bey that repairing tooth #3 was not a priority since he had previously gotten a root canal on that tooth, which should have eliminated the possibility of further pain.

Wommack also determined that Collins Bey's dentures were so badly broken that they needed to be replaced.[2] Wommack (as well as the other dentist defendants) concluded that Collins Bey could receive a new partial denture only after restorative care was finished and Collins Bey's mouth was healthy.

In August 2007, Collins Bey submitted a DSR asking about the dentures, and Wommack responded that he had not forgotten about him. Wommack worked either one or two days a week at WSPF, and there was a long waiting list for dental care.

Wommack next saw Collins Bey in June 2008. Wommack does not specifically remember why there was such a long period of time between appointments, but he notes that there was a "considerable" waiting list. Wommack saw Collins Bey for what Wommack terms an "emergency exam," saying that that type of exam is usually performed when a patient complains of pain. Wommack took X-rays and concluded that teeth #3, #6, #11, #12, and #29 had decay and that #15 had a defective filling. Wommack filled teeth #3 and #12. Collins Bey told Wommack that he wanted to wait to have #15 restored.

Wommack saw Collins Bey again on August 15, 2008, for an exam and more X-rays. Wommack thought that an area on tooth #6 "looked suspicious" and "made a plan to look at that area more closely." He concluded that #11 and #29 needed crowns and that #15

---

[2] The parties dispute whether Wommack told Collins Bey that he would try to fix the dentures with "crazy glue," but at this point I do not take plaintiff to be asserting that Wommack was deliberately indifferent or negligent by failing to attempt that type of repair.

needed a new filling. Wommack filled #15 and told Collins Bey to submit a DSR for more treatment.

At some point after this, defendant James Thorpe replaced Wommack as the WSPF dentist. In late October 2009, Collins Bey wrote a DSR stating that he had severe pain coming from the right side of his mouth, where defendant Wommack had filled three of his teeth. Although his contemporaneous DSR does not mention a filling, he stated in a later grievance that one of his fillings had fallen out. Collins Bey stated that the acetaminophen he had been given did little to dull the pain. A couple days later, a nurse told Collins Bey that he would be seen that day, but he was later informed that due to a "mix up," the dentist was not scheduled to work that day. Collins Bey filed another DSR about the severe pain. A dental hygienist responded, stating that "you are on the list to be seen the next time we have a dentist in the institution" and that he should make do with the medication provided by nurses. Dkt. 94-1, at 18.

Defendant Thorpe saw Collins Bey on November 17, 2009, took X-rays, discovered a cavity in tooth #29, and filled it. Thorpe did not treat tooth #3, even though it was broken and jagged below the gum line, telling Collins Bey that it would not cause him pain because of his previous root canal there.

In late November 2009, Collins Bey filed a grievance encompassing much of the dental care discussed above. Complaint examiner (and non-party) Ellen Ray investigated the grievance by contacting defendant Mary Miller, the Health Services Unit manager. Miller told Ray about Collins Bey's history of dental problems and described the several different appointments with dentists discussed above. Ray recommended dismissing the grievance because the medical history showed that defendant dentists were not ignoring Collins Bey

and because Ray arguably did not have the authority to countermand the medical decisions of dentists.

Defendant Cynthia Thorpe reviewed Collins Bey's petition and dismissed it.[3] Collins Bey went on to appeal the decision to the corrections complaint examiner and the office of the secretary, but he lost both of those appeals.

Almost two years later, in August 2011 (Collins Bey had been transferred to CCI by then), Collins Bey submitted a DSR stating that he needed a filling repaired, he had a tooth that had broken down to the gum line, his gums were sore and bleeding, and he had been in constant pain the last three years because of an inability to eat food without his dentures. Defendant dentist William Giswold told Collins Bey that he was being placed on the essential waiting list. Giswold worked two days a week; it is unclear whether he split time between more than one institution.

Defendant Thorpe saw Collins Bey on September 29, 2011 (Thorpe apparently worked at both CCI and WSPF). Thorpe took X-rays, diagnosed him with "mild to moderate periodontal condition," concluded that tooth #29 had an abscess, and extracted that tooth. Thorpe prescribed an antibiotic, as well as ibuprofen for pain. Thorpe told him to file a DSR for any further treatment. Thorpe thought that the abscess in tooth #29 was the most imminent need. He treated only that need because of time constraints and other patients' needs.

---

[3] There are two defendant Thorpes. To avoid confusion with defendant dentist James Thorpe, I will refer to defendant Cynthia Thorpe by her first and last names. Because James Thorpe is mentioned throughout the opinion, I will often refer to him as "defendant Thorpe." Cynthia Thorpe says that she is "related" to defendant James Thorpe, but that this did not factor into her decision. The Thorpes' relationship is ultimately immaterial to this opinion, but one hopes that the state attempts to avoid such apparent conflicts that undermine the integrity of its administrative grievance process.

Collins Bey filed a DSR in early October, stating that he had been trying to have tooth #3 taken out since 2007, and that he saw the dentist in September but he did not remove #3. Defendant Giswold responded, telling Collins Bey that he was being placed on the essential waiting list.

Giswold saw Collins Bey on October 18, 2011. Giswold concluded that tooth #3 was "non-restorable" and infected. Giswold extracted that tooth and prescribed Collins Bey ibuprofen for the pain. Giswold told Collins Bey that tooth #12 needed to be extracted because it was not a good anchor for his partial dentures and that #6 and #11 needed to be filled before a partial denture could be created. On October 25, 2011, Giswold filled teeth #6 and #11.

On November 24, 2011, Collins Bey submitted a DSR stating that there were still pieces of tooth #3 remaining in his gums, which caused him pain. Thorpe responded to the DSR on November 30, informing him that he was being placed on the essential wait list. Thorpe saw Collins Bey on December 2 for follow up on the removal of tooth #3 that had been performed by defendant Giswold. Thorpe noted a "boney spicule" and then surgically removed some loose bone and a root fragment, and also smoothed some bone to address any sharp edges. Thorpe prescribed an antibiotic and ibuprofen.

In mid-March 2012, Collins Bey missed a dental appointment because his designated escort did not arrive. Collins Bey says that he wrote a letter to defendant Anthony Ashworth, a unit manager, about the problem, and that two weeks later Ashworth told him, "You're going to learn to keep your mouth shut." A couple days later, Collins Bey was transferred to WSPF. Ashworth did not have any role in that transfer. In April, Collins Bey wrote to CCI Warden Michael Meisner about the transfer.

In late March 2012, defendant Karen Anderson, the Health Services Unit manager at CCI, received a letter from Collins Bey stating that he was being denied dental care. Anderson responded that Collins Bey had been seen in December, had been scheduled to be seen in mid-March but that the escort had fallen through, and that he should submit a DSR with dental staff. She had no involvement in scheduling dental appointments.

The parties dispute whether Collins Bey wrote a letter about his dental care to Warden Tim Haines in 2012 and wrote a letter to the current warden, Gary Boughton, in 2014. Both Haines and Boughton say that because they have no medical expertise, it is their policy to direct letters about medical care to the Health Services Unit.

Collins Bey was diagnosed with gum disease in late 2014. He had at least two more teeth extracted, and in February 2015 he received a new partial denture.

ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

9

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Collins Bey was allowed leave to proceed on the following Eighth Amendment claims:

- defendants failed to provide him partial dentures

- defendants delayed the replacement of the filling in his tooth that lost a filling

- defendants delayed the extraction of his broken tooth

- official capacity claims against defendants Boughton[4] and Miller for maintaining a policy of not having a full-time dentist on staff at WSPF

---

[4] The court originally allowed Collins Bey to proceed on this official capacity claim against defendant Haines, as the then-current WSPF warden. Because defendant Boughton is the

Dkt. 8, at 7-8. In screening the complaint, Judge Crabb stated that she took Collins Bey "to be stating that each of these dental problems has been causing him significant pain and perhaps contributed to gum disease as well." *Id*. at 8.

Collins Bey was also allowed leave to proceed on parallel Wisconsin law medical negligence claims against each of the defendant dentists. To prove this type of claim, Collins Bey must prove that the defendant dentists breached their duty of care to him and that he suffered injury as a result. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860.

## A.  Delay in providing restorative work and the new partial denture

The main thrust of Collins Bey's complaint and briefing is focused on the extremely drawn-out process he had to undergo to receive a replacement for his partial denture. And it is easy to see why he focused on this: at the times Collins Bey filed his original and amended complaints, it had been years since he had requested a replacement denture, yet he had not received them. Collins Bey states in his summary judgment materials that he finally received his replacement denture in 2015, roughly *eight years* after making his initial request. He says that this caused him pain and he attributes his gum disease to this delay.

The defendant dentists all state that they did not perceive Collins Bey's request for a replacement denture to be an emergency. In fact, they state that he did not *need* dentures at all, because he had enough remaining teeth to be able to function without "undue pain and suffering." Defendants say that the partial denture was a cosmetic problem, not a medical one. His pain was caused by poor dental hygiene that led to "rampant" tooth decay, not by

---

current warden, I substitute him for Haines on this claim.

the lack of a partial denture. They state that the partial denture could not be completed until the restorative work was done, and thus the restorative work was the main priority as far as Collins Bey's treatment went. But it was not a serious concern in the context of the many patients and long waiting list at WSPF. Defendants' expert opinions are sufficient to show that Collins Bey did not have a serious medical need for dentures, and Collins Bey himself is not qualified to say otherwise.[5]

But that alone is not enough to defeat this set of claims. The crux of the claim is not really the specific medical treatment—the dentures—Collins Bey sought to alleviate his ongoing pain. The question is whether Collins Bey suffered unnecessary pain as the result of defendants' deliberate indifference in drawing out his treatment.

Despite their statements that Collins Bey's pain was caused by deteriorating teeth, rather than lack of a partial denture, and that restorative work was their priority, it still took several years for defendants to get through the task of completing the restorative work, often completing only part of the work that needed to be done at a certain time because of time and workload constraints. Collins Bey remained in pain throughout this process. But the record shows that defendants were not cavalier toward Collins Bey's problems. Rather, defendants stress that their piecemeal work was the result of their limited availability and the length of the waiting list for treatment. They include the following facts:

- While Boston was the dentist at WSPF, he worked 1 day a work at WSPF for 6 hours a day. Due to this fact, Boston would see the patients in order on the wait list. . . . Collins Bey's complaint was not an emergent concern and did not necessitate moving him to the front of the wait list over other inmate's dental care needs. Dkt. 116, ¶¶ 39-40, 42.

---

[5] Collins Bey argues at many points in his responses to defendants' proposed findings of fact that defendants cannot give expert opinions. But they are trained dentists, so they are free to opine about medical issues related to dental care.

- Dr. Wommack further informed Collins Bey that he was only at the institution 4 days a month so the list is very long. Dr. Wommack does not specifically recall why there was an 11 month gap between appointments. However, there was a considerable patient wait list to be seen and Dr. Wommack was the only dentist providing dental treatment services for patients at WSPF. *Id*. at ¶¶ 63, 67-68.

- Although Dr. Thorpe does not specifically recall, he may have told Collins Bey to file a DSR to address tooth #3. Dr. Thorpe determined that the periapical abscess in #29 was the more imminent need and due to time limitations due to other appointments, Dr. Thorpe treated Collins Bey's chief complaint and need. . . . While Dr. Thorpe was the dentist within DOC, he worked at 2 DOC institutions to provide dental treatment to the inmates incarcerated at those institutions. Due to this fact, Dr. Thorpe would see the patients in order on the wait list as needed. *Id*. at ¶¶ 106-07, 115-16.

- The wait time to be seen by the dentist was influenced by the more imminent dental needs of other inmates at the institution. . . . While Dr. Giswold was the dentist within DOC, he worked 2 days a week to provide dental treatment to the inmates incarcerated at those institutions. . . . Based on the limited time allotted to address the dental needs of the inmates, Dr. Giswold would provide care to the most serious issue first and provide subsequent care as needed. *Id*. at ¶¶ 124, 149, 152.

It is clear why the defendant dentists included these statements: they show that defendants were doing the best they could in handling Collins Bey's relatively less serious concerns in the context of dealing with their entire workload, long patient waiting lists and short work weeks. In short, they used their medical judgment to prioritize which patients to treat first. *See, e.g.*, *Davis v. Harding*, No. 12-CV-559-WMC, 2014 WL 5454216, at *2 (W.D. Wis. Oct. 24, 2014) ("Davis has offered no evidence that Rutherford's decision to make another patient's needs a priority was an act of deliberate indifference, rather than one of many ordinary acts of discretion doctors are called on to exercise multiple times a day."); *Green v. Shannon-Sharpe*, No. 11-CV-816-SLC, 2013 WL 5137537, at *6 (W.D. Wis. Sept. 13, 2013) ("No reasonable jury could conclude from the vague shouts of other inmates that Shannon-Sharpe should have known not only that Green was at risk of severe distress, but also that he was more at

risk of serious harm than the inmate with whom Shannon-Sharpe was interacting. . . . But even if there is room to quibble, any mistakes that Shannon-Sharpe might have made in her triage decisions do not come close to deliberate indifference.").

Because nothing in the summary judgment materials raise a reasonable inference that defendant dentists acted with deliberate indifference, or even negligence, with regard to their decisions to spread out the course of dental care addressing Collins Bey's general complaints of pain and discomfort in conjunction with his requests for replacement dentures, I will grant their motion for summary judgment on these sets of claims.

## B. Delay attending to acute dental needs

Collins Bey was also allowed to proceed on Eighth Amendment and negligence claims for two instances of more acute need.

### 1. Replacement filling

The first was his late October 2009 complaint about severe pain from the site of a 2007 filling he had received from defendant Wommack. In both his original and amended complaint, Collins Bey alleged that a filling had fallen out of the tooth, that he was in severe pain, and that the acetaminophen he had been given was not working. But he was not seen by defendant Thorpe for 20 days. Instead, he was told by a nurse that he would be seen, but that did not happen, either because there was a misunderstanding over when Thorpe would be at WSPF or because he was too busy with other appointments. Collins Bey alleged that Thorpe fixed the missing filling when he met with him on November 17, 2009.

14

At summary judgment, Collins Bey does not present any evidence suggesting that Thorpe acted, either intentionally or negligently, to cause the delay in treatment.[6] The facts regarding Thorpe's treatment itself are slightly different from those alleged, although they do not suggest that Thorpe violated Collins Bey's rights. The parties now agree that Thorpe filled tooth #29, which is not a tooth that had been previously filled by Wommack. But Collins Bey does not argue that Thorpe failed to fix the filling-related problem he brought to that appointment, and in his inmate grievance about his dental care he states that Thorpe "refixed the broken tooth . . . one of the same ones that [Wommack] was suppose[d] to have fixed." Dkt. 93-1, at 12. The only reasonable inference is that Thorpe fixed Collins Bey's problem, so I will grant defendants' motion for summary judgment on the deliberate indifference and medical negligence claims against Thorpe on this issue.

### 2. Extraction of broken tooth

Collins Bey claims that at the November 17, 2009, appointment with defendant Thorpe, he acknowledged that tooth #3 was broken and "jagged below the gum line," but did not do anything to treat that tooth; he thought it could not cause Collins Bey pain because a root canal had previously been performed on that tooth. I do not take Collins Bey to be saying that he told Thorpe that he was in pain from tooth #3 at that point.

Collins Bey continued to seek extraction of that tooth because he was concerned about it causing gum disease and because he needed it removed before he could get a new partial denture. After Collins Bey was transferred to CCI in August 2011, he submitted a DSR asking to have tooth #3 removed. Although he had other dental work done more

---

[6] It is clear from Collins Bey's original allegations that part of his complaint about these events is that he would have been seen sooner had WSPF employed a full-time dentist. The parties are free to discuss this incident in addressing Collins Bey's official capacity claim.

immediately, he did not have #3 removed until October 2011, by defendant Giswold. But Giswold had not completely removed the tooth. After Collins Bey complained about pain from pieces of tooth #3 left in his mouth, Thorpe removed the "boney spicule" and root fragment that was left.

The process in diagnosing and removing tooth #3 was not smooth. But that does not mean that defendants violated the Eighth Amendment or were negligent. Collins Bey contends that Thorpe violated his rights by disregarding the threat of gum disease caused by that tooth. But Collins Bey is not qualified to testify that the tooth could have caused gum disease. He also contends that Thorpe was incorrect about whether the root canal eliminated any chance the tooth could cause him pain, and that Giswold incompetently performed the initial extraction. But those assertions, even if true, do not support deliberate indifference claims.

Nor can Collins Bey show that Giswold or Thorpe were medically negligent. In Wisconsin, a plaintiff cannot satisfy his burden of proving that a doctor was negligent without providing expert testimony establishing the required degree of care and skill. *Christianson v. Downs*, 90 Wis. 2d 332, 338, 279 N.W.2d 918, 921 (1979). Just asserting that the doctor made a mistake is not sufficient:

> A doctor is not an insurer or guarantor of the correctness of his diagnosis; the requirement is that he use proper care and skill. The question is not whether the physician made a mistake in diagnosis, but rather whether he failed to conform to the accepted standard of care.

*Id*. (citations omitted); *see also* Wis JI–Civil 1023 ("A [doctor] is not negligent, however, for failing to use the highest degree of care, skill and judgment or solely because a bad result may have followed" his treatment.). There are rare exceptions to the requirement that the plaintiff

16

provide expert testimony, such as when a surgeon leaves a sponge inside a patient during surgery or removes the wrong organ or body part. *See Christianson*, 90 Wis. 2d at 339. But the types of errors asserted here are not egregious enough to allow Collins Bey to forgo expert testimony. Accordingly, I will grant defendants' motion for summary judgment on this claim.

## C. Eighth Amendment claims against other defendants

Collins Bey brings Eighth Amendment claims against a variety of other prison officials for receiving his informal complaints or inmate grievances about the delays in treatment but failing to help him. But he fails to show that any of them were deliberately indifferent. Collins Bey fails to show that some of the remaining defendants actually received his complaints and thus were personally involved in addressing his concerns. But even the defendants who did receive his various complaints were not deliberately indifferent to Collins Bey because they deferred to the medical judgment made by the defendant doctors, whom I have already concluded did not violate his rights.

That leaves only defendant Ashworth, who Collins Bey alleges told him to shut his mouth after he complained about not receiving an escort to a dental appointment. But Collins Bey does not provide any evidence suggesting that Ashworth was responsible for thwarting his treatment by canceling his escort. Collins Bey also originally alleged that Ashworth had him transferred back to WSPF because of this, but it is undisputed that Ashworth has no power over transfer decisions. Collins Bey also does not explain how that transfer harmed his medical care. All of the claims against these remaining defendants will be dismissed.

17

**D.  Official capacity claims for understaffing the dental unit**

The defendant dentists' testimony about the priorities they placed on Collins Bey's medical needs and the workloads they faced is enough to defeat the individual capacity claims against them. But that testimony supports Collins Bey's claim against Boughton and Miller in their official capacities for maintaining a policy of not having a full-time dentist on staff at WSPF.

Because Collins Bey brings this claim against defendants in their official capacities, the claim operates as one against the state itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To establish that he is entitled to injunctive relief on his official capacity claims, Collins Bey must show that a policy or custom of the state played a part in the alleged constitutional deprivation. *Id*. The defendants' statements give credence to Collins Bey's theory that he suffered long delays in his medical treatment because WSPF was not staffed with enough dentists. In their brief supporting their motion for summary judgment, defendants ask for the case to be dismissed in its entirety, but they do not address the official capacity claim. So I will deny their motion regarding this claim. Because it seems likely that the parties will want a chance to resolve this claim at summary judgment, I will give defendants a chance to file a new motion addressing this claim. Upon briefing the official-capacity claim, it would be particularly useful to hear from the parties about how the staffing levels are determined and who exercises true oversight over workload concerns.

ORDER

IT IS ORDERED that:

1. Plaintiff Robert L. Collins Bey's motion for extension of legal loan funds, Dkt. 101, is DENIED as moot.

2. Plaintiff's motion for leave to file an oversized brief and have it electronically served upon defendants, Dkt. 112, is DENIED as unnecessary.

3. Plaintiff's motion for assistance in recruiting counsel or appointment of an expert witness, Dkt. 111, is DENIED.

4. Defendants' motion for summary judgment, Dkt. 80, is GRANTED in all respects except regarding plaintiff's claim for injunctive relief against defendants Boughton and Miller in their official capacities for maintaining a policy of not having a full-time dentist on staff at WSPF.

5. Defendants may have until November 18, 2016, to submit a motion for summary judgment, supporting brief, supplemental proposed findings of fact, and supporting materials on plaintiff's official capacity claim. Should defendants file such a motion, the court will follow with a briefing schedule.

Entered September 30, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

19