IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT L. COLLINS BEY,

                     Plaintiff,

  v.

TIM HAINES, PETER HUIBREGTSE,
MICHAEL MEISNER, TONY ASHWORTH,
MARY MILLER, CINDY SAWINSKI,
KAREN ANDERSON, CYNTHIA M. THORPE,
DR. JAMES THORPE, DR. JAMES WOMMACK,
DR. WILLIAM GISWOLD, DR. TOM BOSTON,
and GARY BOUGHTON,

                     Defendants.

OPINION & ORDER

13-cv-618-jdp

---

Plaintiff Robert L. Collins Bey, a prisoner currently housed at the Wisconsin Secure Program Facility (WSPF), brings Eighth Amendment deliberate indifference and state law negligence claims regarding defendant prison officials' alleged failure to provide him with adequate dental care. He alleges that prison staff left serious dental problems untreated for unreasonably long periods, including a delay of eight years in providing him with a replacement for a broken partial denture.

In a September 30, 2016 order, I granted defendants' motion for summary judgment regarding all of the individual-capacity claims that Collins Bey brought, in large part because the summary judgment record showed that the individual defendants were doing the best they could in handling Collins Bey's treatment "in the context of dealing with their entire workload, long patient waiting lists and short work weeks." Dkt. 119, at 13. But testimony about the crushing workload faced by dental staff supported Collins Bey's official-capacity claim against defendants Warden Gary Boughton and Health Services Unit manager Mary Miller regarding

the state's policy for staffing the WSPF dental unit. Defendants did not directly address this claim in their motion for summary judgment, so I gave defendants a chance to file a new motion about the official-capacity claim, which they have done. Collins Bey has filed a motion for reconsideration of the September 30, 2016 order.

I will deny Collins Bey's motion for reconsideration of my dismissal of his individual-capacity claims. Defendants' supplemental submissions about Collins Bey's official-capacity claim show that they planned to increase their dentist staffing levels, likely mooting the claim. But I will direct defendants to respond to ensure that they have followed up with this plan.

A. Motion for reconsideration

Collins Bey has filed a motion for reconsideration of my order granting summary judgment to defendants on his individual-capacity claims. Dkt. 127. Under Federal Rule of Civil Procedure 54(b), I may revise any non-final order prior to entry of judgment adjudicating all of the claims in a case. Motions to revise an order under Rule 54(b) are subject to a standard that are very similar to the standard for motions to alter or amend a judgment under Rule 59(e): they should be granted only to correct manifest errors of law or fact or to present newly discovered evidence. *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665–66 (N.D. Ill. 1982*)); Bullock v. Dart*, 599 F. Supp. 2d 947, 964 (N.D. Ill. 2009). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997)).

Collins Bey does not bring any new evidence. Instead he brings a series of legal arguments, all of which I conclude are insufficient for me to change my previous rulings. His main argument is that I erred in concluding that there were no genuine issues of material fact concerning his individual-capacity claims about how defendants directly provided him with dental care. In particular, he states that I erred in weighing the credibility of witnesses and accepting defendant dentists' opinions about the urgency of his dental needs and their treatment choices over his characterizations of those issues. But Collins Bey mischaracterizes the reasoning in the summary judgment opinion. I did not make credibility determinations or side with one party about disputed facts. I did accept defendants' expert testimony as unrebutted by Collins Bey, who was unqualified to rebut that testimony himself and who did not present expert testimony of his own.

Collins Bey contends that he showed the deliberate indifference of higher-level prison officials, including the wardens of the facilities in which he was incarcerated, by alerting them to the delays in care. But I addressed this argument in the summary judgment opinion: they were not deliberately indifferent to Collins Bey's dental needs because they ultimately deferred to the medical judgment of the dental providers. *See* Dkt. 119, at 17.

Collins Bey also reiterates his disagreement with my decision to allow his court-recruited attorneys to withdraw from the case after he sent them harassing letters, and he says that I should have recruited new lawyers for him. *See* Dkt. 62. But he does not provide any new evidence suggesting that I should reconsider my conclusions that he should have known that his behavior was inappropriate and that he was not entitled to new counsel given his harassment of the lawyers I recruited. He also complains about the quality of representation he received from these lawyers, but that issue is irrelevant to the matters at hand. He had time

to conduct discovery and oppose defendants' summary judgment motion, notwithstanding any tasks his lawyers accomplished or failed to accomplish while they represented him.

Finally, Collins Bey contends that it was improper for me to give defendants a chance to file a second summary judgment motion on his official-capacity claims, stating that they "waived" those claims by not mentioning them in their original summary judgment motion. Collins Bey is correct that I could have moved this case directly to trial following defendants' failure to address the official-capacity claims. But it would be a waste of the court's and both sides' resources to hold a trial when the facts are undisputed. I will discuss the official-capacity claim below.

B. **Official-capacity claim**

Although I dismissed each of Collins Bey's claims against defendants in their individual capacities, the evidence suggested that the long delays in dental treatment at WSPF were caused by the failure to employ a full-time dentist, which gave rise to an official-capacity claim against defendants Warden Gary Boughton and Health Services Unit manager Mary Miller regarding the state's policy for staffing the WSPF dental unit. I gave defendants a chance to file a supplemental motion on this claim, which they have done. Collins Bey did not respond.

Collins Bey's official-capacity claim is one for injunctive relief. I previously explained to Collins Bey that to show that he is entitled to injunctive relief on this claim, he would need to show that a policy or custom of the state played a part in the alleged constitutional deprivation. Dkt. 119, at 18 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The facts presented during the original summary judgment briefing suggested that WSPF had a dentist present about one or two days a week, and that this staffing level was the result of DOC policies.

4

Defendants first contend that the official-capacity claim should be dismissed because Boughton and Miller have no involvement with the staffing of dentists or dental hygienists at WSPF. That is a reason to substitute the proper defendant but not a reason to dismiss the claim in its entirety. The state's position is that Man Lee, the DOC dental director, makes all hiring decisions about dental employees. I will substitute Lee for Boughton and Miller.

As for the substance of this claim, Collins Bey faces a high burden. This court is limited to ordering injunctive relief that "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *See* 18 U.S.C. § 3626(a)(1)(A). And Collins Bey eventually received the treatment he sought. That does not automatically mean that his claim for injunctive relief is moot, but there must be "some cognizable danger of recurrent violation, something more than the mere possibility." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (internal quotations omitted).

Collins Bey contends that the delays in dental treatment were caused by WSPF not having a full-time dentist on staff, and this appears to be supported by the data provided by defendants. The evidence provided in the parties' original summary judgment briefing showed that a dentist was at WSPF one or two days a week. But in their supplemental briefing, defendants explain their plan for increasing dentist hours at WSPF, in light of DOC's "dental waitlist report cards" showing increased wait times at WSPF in 2016 while DOC had a vacancy for its part-time dentist and instead used other dentists on a fill-in basis.[1] From January to

---

[1] Defendants also say that the "National Commission on Correctional Health Care" sets guidelines for the number of dentist on staff at a prison, in support of its contention that roughly one half-time dentist is enough for WSPF's 421 prisoners. But defendants do not explain the authority behind this commission, and the one-page excerpt of a NCCHC report defendants provide does not support defendants' position. It states, "The general expectation

5

October 2016, the wait list and wait times increased for inmates with "routine" and "essential routine" problems, which I infer could include inmates who suffer a non-emergency amount of pain. During that time, the wait list for "routine" care grew from 59 inmates to 73, with the maximum wait time increasing from 37 weeks to 58 weeks.[2] *See* Dkt. 126-3, at 6, 76. the wait list for "essential routine" care grew from 5 inmates to 12, with the maximum wait time increasing from 5 weeks to 11 weeks.[3] *See* Dkt. 126-3, at 5, 75. By October 2016, both of these maximum wait times exceeded DOC policy: routine problems were to be scheduled within 40 weeks and essential routine problems were to be scheduled within 8 weeks. Dkt. 126-2, at 6. It's worth noting that at no point during this period was there any wait time for "urgent" dental problems, which DOC defines as "conditions which if not completed in a timely manner, could result in undue pain and suffering. Examples include: moderate post-operative bleeding, pain not relieved by medications, acute oral infections, symptomatic trauma to teeth or jaws, periodontal or periapical abscess." Dkt. 126-2, at 3.

Lee says that he hired a dentist to fill the part-time position at WSPF, who would be scheduled to work there about 24 hours a week. Lee also planned to assign a limited-term

---

is that the staffing plan includes, at a minimum, one physician on site 3.5 hours a week for each 100 inmates housed in the facility." Dkt. 126-1. But as best as I can tell from this very limited excerpt, the report is talking about general-practice medical doctors, not dentists.

[2] A DOC policy defines "routine" conditions as those "that are asymptomatic and for which a delay in completion of up to one year would not result in serious risk. Examples include: minor caries, old but serviceable fillings, prosthetics which are cosmetic needs only, denture repairs when the denture remains functional." Dkt. 126-2, at 3.

[3] The DOC policy defines "essential routine" conditions as those "which are chronic, asymptomatic, and which if not completed within 6-8 weeks could result in an acute episode. Examples include: advanced caries, teeth with hopeless prognosis, infected teeth, and care for inmate patients which is relevant to their chronic medical conditions." Dkt. 126-2., at 2.

dentist to provide another 8 to 16 hours of care split between WSPF and another prison. This is a material improvement in the amount of dentist time that was allocated to WSPF during the events at issue on this case. So, at least on its face, this appears to be a reasonable response to the wait-list statistics, and I would be inclined to conclude that Collins Bey's claim for injunctive relief is mooted by the DOC's commitment to provide more dentist time at WSPF. But before granting summary judgment to defendants on the injunctive-relief claim, I want to be certain that they have followed through on their plan. So I will direct the state to provide materials explaining how many hours of dentist time they now have at WSPF, and the impact it has had on the wait lists for dental care at WSPF. Collins Bey will be given a chance to respond.

ORDER

IT IS ORDERED that:

1. Plaintiff Robert L. Collins Bey's motion for reconsideration of the court's September 30, 2016 order, Dkt. 27, is DENIED.

2. DOC Dental Director Man Lee is substituted for defendants Boughton and Miller.

3. Defendants Boughton, Miller, Haines, Huibregtse, Meisner, Ashworth, Sawinski, Anderson, Cynthia Thorpe, James Thorpe, Wommack, Giswold, and Boston are DISMISSED from the case.

4. Defendant Lee may have until September 11, 2018, to respond to this order regarding the implementation of the DOC's hiring plan. Plaintiff may have until September 25, 2018, to respond to defendant's filing.

Entered August 21, 2018.

BY THE COURT:
/s/
_____
JAMES D. PETERSON
District Judge